UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| M.A., individually and on behalf of H.S., a student with a disability,<br><br>                                        Plaintiffs,<br><br>               -against-<br><br>The Board of Education of the City School District of the City of New York, the New York City Department of Education, a/k/a New York City Public Schools, the City of New York, and Chancellor Melissa Aviles-Ramos, in her official capacity,<br><br>                                        Defendants. | 25 CV_____ (___)<br><br>ECF CASE<br><br>**COMPLAINT** |

## PRELIMINARY STATEMENT

1.      Plaintiff, M.A., individually, and as the parent and legal guardian of H.S., a student with a disability, bring this action for declaratory and injunctive relief pursuant to the Individuals with Disabilities Education Improvement Act, 20 U.S.C. §§ 1400 *et seq*. ("IDEA")[1] alleging that Defendants denied H.S. access to a free and appropriate public education ("FAPE") through the actions of the Committee on Special Education ("CSE") and/or the Central Based Support Team ("CBST").

2.      H.S. is a nineteen-year-old student who is eligible to receive special education and related services including residential placement as a student with a disability, namely autism,[2] which is not in dispute between the parties.

---

[1] The Individuals with Disabilities Education Improvement Act amended and restated the Individuals with Disabilities Education Act, which was known by the acronym "IDEA."  The amended statute is sometimes referred to as the "IDEIA," especially if there is a focus upon a provision in the IDEIA that amended the IDEA. In this Complaint, we use the acronym "IDEA."

[2] H.S.'s eligibility for special education and related services as a student with autism is not in dispute between the parties (*see* 34 CFR 300.8[c][1]; 8 NYCRR 200.1[zz][1]).

3.      H.S. has a long history of aggressive and self-injurious behaviors that interfere with his ability to learn and develop age-appropriate social and independent daily living skills. Since age five, H.S. has been attending the New York Department of Education's ("DOE") Specialized District 75 Schools with a paraprofessional to ensure his and others' safety. At home, he has received various social skills services and training.

4.      Despite intensive specialized programs and home-based services, H.S.'s maladaptive behaviors have increased in both frequency and severity to the point where Plaintiff M.A. was not able to control him. H.S. has seriously hurt M.A. and his siblings on many occasions; has tried to sexually abuse M.A. and his sisters; has tried to kill M.A. and himself; and has been admitted to psychiatric hospitals on numerous occasions due to his violent tendencies and outbursts.

5.      H.S. is currently placed in the Shrub Oak International School ("Shrub Oak"), a private residential school located in Mohegan Lake, NY, as a result of a prior Impartial Hearing Officer's ("IHO") Findings of Fact and Decision ("FOFD"), dated October 15, 2024, which ordered Defendant DOE to fund H.S.'s residential placement at Shrub Oak for a portion of the 2024-2025 school year, from November 7, 2024 through June 30, 2025.[3]

6.      Although Plaintiff M.A. has filed a Due Process Complaint ("DPC") for the current 2025-2026 school year and sought to keep H.S. at Shrub Oak pursuant to the IDEA's pendency ("stay put") provisions, the newly appointed IHO denied Plaintiff's request for an interim order on pendency ("OP") pending the final resolution of the administrative  proceeding.

7.      In the absence of the OP and Defendants' public funding, Shrub Oak will discharge H.S. on September 30, 2025 unless this Court remedies this crisis.

---

[3] As a matter of New York State law, the school year runs from July 1 through June 30; therefore, a 12-month school year program effectively begins on July 1 (*see* Educ. Law § 2[15]).

8.    Defendant DOE has conceded that it does not have an appropriate interim residential placement for H.S. while the administrative proceeding is pending.

9.    Based on Defendants' violation of Plaintiffs' pendency rights under the IDEA, Plaintiff M.A. seeks injunctive and declaratory relief to keep H.S. at Shrub Oak at Defendants' public expense pending the underlying administrative process. Plaintiff also seeks reimbursement for the cost of reasonable and statutory attorneys' fees and litigation costs and expenses.

10.    Plaintiff M.A. brings this action now because, without a temporary restraining order and preliminary injunctive relief, H.S. will be discharged from his current residential placement at Shrub Oak; forced to return home where he presents a physical threat to himself and his family; and without an appropriate educational program and services provided by Defendants.

## JURISDICTION

11.    This is a Complaint pursuant to the IDEA, 20 U.S.C. §§ 1400-1485. This Court has jurisdiction pursuant to 20 U.S.C. §1415(i)(2)(A), 20 U.S.C. 1§415(i)(3(A) and 28 U.S.C. §§1331 and 1343.

12.    Plaintiffs are not required to exhaust their administrative remedies under IDEA for their claims because H.S. is entitled to a placement during the pendency of a due process hearing pursuant to 20 U.S. § 1415(j), or, alternatively, this Court may order an interim placement pursuant to 20 U.S.C. § 1415(i)(2)(C)(iii). Plaintiff M.A. is the aggrieved party within the meaning of 20 U.S.C. §1415 (i)(2)(A).

13.     Plaintiffs have a pending due process proceeding (IHO Case #296317) in which they contend, among other things, that Defendants denied H.S. a FAPE by failing to recommend any educational program and placement for the 2025-2026 school year.

14.     Plaintiff M.A. has requested that Defendants fund the cost of H.S.'s current educational placement at Shrub Oak under 20 U.S.C. § 1415(j) pending the final outcome of the administrative proceedings.

15.     Defendants have failed and/or refused to provide any interim placement at all, although they have a legal obligation to provide H.S. with a pendency placement while the underlying claims are litigated.

## FACTUAL BACKGROUND

16.     In April 2024, Plaintiff M.A. requested an impartial hearing alleging Defendants' failure to place H.S. in an appropriate residential program and sought public funding for prospective placement at Shrub Oak for the 2024-2025 school year. Defendant DOE conceded the denial of a FAPE for the 2023-2024 and 2024-2025 school years.

17.     After an impartial hearing, Impartial Hearing Officer ("IHO") Peggy Chan, Esq. issued a FOFD dated October 15, 2024 that granted Plaintiff M.A.'s request for prospective funding and ordered Defendant DOE to pay the cost of H.S.'s residential placement at Shrub Oak for the remainder of the 2024-2025 school year. Defendant DOE did not appeal the FOFD and it became final and binding upon the parties. A redacted copy of the FOFD is appended as Exhibit 1 to the Declaration of Laura D. Barbieri ("Barbieri Decl."), dated September 11, 2025.

18.     IHO Chan's final and binding FOFD ordering Defendants to fund the cost of H.S.'s residential placement at Shrub Oak represents H.S.'s pendency program for the current school year and proceeding.

19.     H.S. was placed at Shrub Oak on November 7, 2024, and has remained there to date.

20.     Plaintiff, M.A., through her attorney, filed a Ten Day Notice on June 17, 2025 and a Due Process Complaint ("DPC") on July 1, 2025, alleging inter alia Defendant DOE's failure to provide H.S. with any educational program or placement, and seeking continued public funding for H.S.'s residential placement at Shrub Oak for the 12-month 2025-2026 school year. (IHO Case No. 296317).

21.     Defendant DOE would not agree to pendency at Shrub Oak, and accordingly, on July 15, 2025, Plaintiffs' counsel contacted the newly appointed IHO Leah Martin, Esq. and requested an OP based on the unappealed final and binding FOFD dated October 15, 2024.

22.     After requesting briefs from the parties, Defendant DOE did not propose any pendency placement, but simply demanded the right to make a determination as to H.S.'s pendency.

23.     At no time did Defendant DOE provide IHO Martin with any alternate pendency placement for H.S. in lieu of Shrub Oak.

24.     IHO Martin issued an OP dated August 12, 2025 in which she denied pendency at Shrub Oak and improperly ordered pendency based on an August 15, 2023 IEP, which recommended placement in a New York State Education Department-Approved Residential Non-Public School ("NYSED-Approved NPS"). A copy of the OP is annexed as Exhibit 2 to Barbieri Decl.

25.     Significantly, the October 15, 2024 FOFD ordered funding at Shrub Oak because Defendants failed and never identified a NYSED-Approved NPS that would accept H.S.

26.     To date, there continues to be no NYSED-Approved NPS willing to accept H.S.

27.     Thus, despite IHO Martin's OP, there is no program or school where H.S. can attend if he is discharged from Shrub Oak.

28.     Both Plaintiff M.A. and Defendant DOE have appealed IHO Martin's OP to the State Review Officer ("SRO"). Defendant's cross-appeal was filed on September 2, 2025.

29.     Shrub Oak has informed Plaintiff M.A. that unless payment for the cost of H.S.'s residential placement for the 2025-2026 school year is received by September 30, 2025, H.S. will be discharged from Shrub Oak, creating an immediate crisis for Plaintiffs.

30.     Given the extension request by the DOE, and the expected deliberation time of the SRO, it is not expected that the SRO will issue a decision on the appeal and cross-appeal before the September 30th discharge date. In fact, the SRO just granted Defendant DOE's request for a specific extension of time to serve a portion of the Hearing Record that in turn extended the due date of the SRO decision through and until October 25, 2025. The Office of State Review currently experiences a significant appeal backlog causing substantial decision delays, which in and of itself provides additional grounds for this Court's immediate pendency jurisdiction, and the issuance of temporary injunctive relief.

31.     Plaintiff M.A. therefore seeks injunctive and declaratory relief requiring Defendants to fund H.S.'s current placement at Shrub Oak pending the decision by the SRO, either as a stay-put placement pursuant to 20 U.S.C. § 1415(j) or as an interim placement pursuant to 20 U.S.C. § 1415(i)(2)(C)(iii).

**VENUE**

32.     Defendant DOE's principal office is located at 52 Chambers Street, New York, NY 10007. Venue in this district is proper under 28 U.S.C. § 1391(b)(1) based on the business office and/or residence of Defendant.

## PARTIES

33.     Plaintiff H.S. is a nineteen-year-old student who resides in New York City and is a student with a disability within the meaning of the IDEA, who received special education services in the past from Defendant DOE.

34.     Plaintiff M.A. is the biological parent, guardian, and next friend of H.S.

35.     Upon information and belief, THE NEW YORK CITY DEPARTMENT OF EDUCATION ("Department" or "DOE") is a local educational agency ("LEA") as defined in the IDEA, and thus bears the responsibilities of an LEA under the IDEA and in the New York State Education Law.

36.     Upon information and belief, the DOE is charged with the responsibility of developing policies with respect to the administration and operation of the public schools in the City of New York, including programs and services for students with disabilities.  N.Y. Educ. Law § 2590-g (McKinney 1980).

37.     Defendant, THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK ("the Board of Education" or "the Board"), was or continues to be the official body charged with the responsibility of developing policies with respect to the administration and operation of the public schools in the City of New York.

38.     Upon information and belief, Defendant, MELISSA AVILES-TORRES ("the Chancellor"), is the Chancellor of the New York City School District and, as such, is entrusted with the specific powers and duties set forth in N.Y. Educ. Law § 2590-h. She is the successor in interest to all of the prior Chancellors of the New York City School District during the relevant time periods.

39.     All Defendants jointly and/or individually constitute the LEA under the IDEA and state law.

40.     All Defendants jointly and/or individually are recipients of federal financial assistance.

41.     When the "DOE" is referenced throughout, the term DOE refers individually to Defendants DOE, as well as collectively to Defendants.

**STATUTORY SCHEME UNDER THE IDEA**

42.     The IDEA was adopted in 1975 to ensure that all children with qualifying disabilities receive FAPE. Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education" and "to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A), (B).

43.     One purpose of the IDEA is "to ensure that all children with disabilities have available to them a FAPE that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment and independent living." 20 U.S.C. §1400(d).

44.     During the relevant time periods, the IDEA guaranteed that all eligible students with disabilities, ages three through twenty-one, must be offered a FAPE.  20 U.S.C. § 1412(a)(1).

45.     A FAPE must meet each student's "unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d) (1) (A)-(B).

46.     A FAPE must "include an appropriate . . . secondary school education in the State involved" and be provided in conformity with an IEP.  *See* 20 U.S.C. §§ 1401(9), 1414(d)(2)(A); 8 N.Y.C.R.R. § 200.4(e)(1)(ii).

47.     To be entitled to a FAPE, a student must have one or more of thirteen disabling conditions and, by reason of his/him disability, require "special education" and "related services." 34 C.F.R. § 300.8(a)(1).

48.     Defendants are responsible for providing a FAPE to all eligible students in New York City and for promulgating policies and procedures in accordance with the IDEA.

49.     Every student with one of the designated disability classifications is entitled to an Individualized Education Program, or "IEP"  and the LEA (here, Defendants) must provide an IEP which is individually tailored to each student and is meant to serve as a blueprint for each child's special education services.  20 U.S.C. § 1414(d).

50.     By the beginning of each school year, City Defendants must have an IEP in place that offers a FAPE to each eligible student.  20 U.S.C. § 1414(d)(2).

51.     Before an IEP can be developed, a child must be evaluated in accordance with detailed procedures outlined in federal and state law.

52.     A child is reevaluated in accordance with the same standards at least once every three years, or more frequently if a parent or school district believes it is necessary.

53.     Among other things, an IEP must be developed by a properly constituted IEP team that includes particular members, including the parent and a district representative who is knowledgeable about the services and able to commit district resources.  20 U.S.C. § 1414(d)(1)(B).  The IEP team must meet at least annually, and more frequently, if necessary, to

modify a child's services and/or to address "[a] lack of expected progress toward the annual

goals and in the general education curriculum."  20 U.S.C. § 1414(d)(4)(A)(ii)(I).

54.    The IDEA broadly defines the categories of services that must be offered, which

include, but are not limited to, special education, related services, supplementary aids and

services, transition services, assistive technology ("AT"), and positive behavioral supports and

services (collectively "Special Education Services").

55.    For students who are sixteen years old and older, the IDEA mandates the

provision of transition services that are focused on improving the academic and functional

achievement of the child with a disability to facilitate the child's movement from school to post-

school activities, including post-secondary education, vocational education, integrated

employment (including supported employment), continuing and adult education, adult services,

independent living, or community participation.

56.    Transition services must be based on the individual student's needs, taking into

account the student's strengths, preferences, and interests following an assessment.

57.    Under the 1997 version of the IDEA, as now, the IEP team shall "in the case of a

child whose behavior impedes his or her learning or that of others, consider, when appropriate,

strategies, including positive behavioral interventions, and supports to address that behavior." 20

U.S.C. § 1414(d)(3)(B)(1) (1997).  *See also* 34 C.F.R. § 300.324(a)(2)(i)).  Then, as now, a

functional behavior assessment (FBA) should have been conducted to adequately respond to

these requirements by "determining why a student engages in challenging behavior and how the

student's behavior related to the environment." New York State Education Department, *Guidance

on Functional Behavioral Assessments for Students with Disabilities*, Policy 98-05, July 1998 at

3. "It is the responsibility of the CSE to ensure that functional behavioral assessments, where

appropriate, are conducted and reviewed to . . . develop an IEP which includes behavioral goals and objectives and positive behavioral supports and strategies." *Id.* at 5.   State regulations were subsequently expanded to provide details about the components of an FBA and behavior intervention plan ("BIP"). *See* 8 N.Y.C.R.R. §§ 200.1(r); 200.22(b), 8 N.Y.C.R.R. § 200.4(b)(1)(v).

58.    The IDEA prescribes, in detail, the process for developing IEPs and their contents.  20 U.S.C. § 1414(d)(1)(A), (d)(2); 34 C.F.R. §§ 300.320(a)(2)-(3); 300.324; N.Y. Educ. Law § 4401, *et seq.;* and 8 N.Y.C.R.R.§ 200.4(d)(2)(iii).

59.    For example, an IEP must contain the results of a child's most recent evaluations, as well as an accurate and consistent description of his/her strengths and present levels of academic achievement and functional performance (called "Present Levels of Performance" or "PLPs").  20 U.S.C.  § 1414(d)(1)(A).

60.    An IEP must contain "a statement of the special education and related services and supplementary aids and services, based on peer-reviewed research to the extent practicable, to be provided to the child, or on behalf of the child, and a statement of the program modification or supports for school personnel that will be provided for the child."  20 U.S.C. § 1414(d)(1)(A)(i)(IV).

61.    Each IEP must also contain research-based instructional strategies unless they are not feasible, including positive behavioral interventions and supports for children whose behavior impedes their learning and/or that of others. 34 C.F.R. §§ 300.320(a)(4), 300.324(a)(2)(i); 8 N.Y.C.R.R. §§ 200.4(d)(2)(v)(b), 200.4(d)(3)(i).

62.    An IEP team must also consider whether a student would benefit from AT.  34 C.F.R. §§ 300.5, 300.6, 300.105, 300.324(a)(2)(v).

63.     The Defendants are obligated to make decisions about IEPs, services and placements based on a student's individual needs, and not policies, procedures or availability of resources.

64.     The IDEA contains numerous due process rights to protect the procedural rights of parents and children.  An important right is the obligation of the district to provide Prior Written Notice to a parent, which contains certain requirements, whenever a district "refuses" or "proposes to initiate or change" "the identification, evaluation, or educational placement" or the provision of a FAPE to a student.  20 U.S.C. § 1415(b)(3)(A)-(B).

65.     Further, termination of special education services or a change in educational placement triggers a district's obligation to issue Prior Written Notice.

66.     The Second Circuit has held that a teenager is also entitled to their own notice prior to a change in placement.

67.     One of the IDEA's most well-known due process rights is the right to request an impartial hearing "with respect to any matter relating to the identification, evaluation, or educational placement of [a] child" or the provision of FAPE to a child.  20 U.S.C. § 1415(b)(6)(A).

68.     Thereafter, a parent "shall have an opportunity for an impartial due process hearing, which shall be conducted by the State Educational Agency [("SEA")] or by the Local Education Agency ("LEA") as determined by State law or by the [SEA]."  20 U.S.C. § 1415(f)(1)(A).

69.     The IDEA sets forth detailed requirements for hearing procedures.  20 U.S.C. §1415(f); 34 C.F.R. §§ 300.511-516.

70.     During the relevant time period, Defendants were responsible for affording families an IDEA-complaint impartial hearing.

71.     Defendants are also responsible for implementing orders of impartial hearing officers resulting from impartial hearings pursuant to the IDEA.

72.     States that provide a FAPE to all children with disabilities are eligible for federal funding under the IDEA. *Id*. § 1412(a)(1)(A).

73.     New York State receives federal funds under the IDEA; therefore, it must comply with the IDEA's requirements.

74.     During the relevant time periods, the IDEA guaranteed that all eligible students with disabilities, ages three through twenty-one, must be offered a FAPE.  20 U.S.C. § 1412(a)(1).

75.     The IDEA requires that a state provide each disabled child with an Individualized Education Program ("IEP"). *See* 20 U.S.C. § 1414(d)(1)(A). The IEP is "[t]he 'centerpiece' of the IDEA's education delivery system."

76.     The IDEA also requires participating states to develop an administrative review process for parents who wish to challenge the adequacy of the child's IEP. 20 U.S.C. § 1415(b)(6)-(8).

77.     New York has implemented a two-tier system of administrative review, after which parents may seek judicial review of the administrative decision in state or federal court.

78.     The IDEA further includes a "pendency" or "stay-put" provision that provides that, while the administrative and judicial proceedings are pending and unless the school district and the parents agree otherwise, a child must remain, at public expense, in his or her then-current educational placement. *See* 20 U.S.C. § 1415(j).

79.    A prior unappealed IHO decision may establish a student's current educational placement for purposes of pendency.

80.    Although the IDEA generally requires that any available administrative remedies be exhausted before a lawsuit is filed in federal court, when an action alleges a violation of the stay-put provision, such action falls within one, if not more, of the enumerated exceptions to the IDEA's exhaustion requirement.

## STATEMENT OF FACTS

81.    As set forth in the October 15, 2024 FOFD, H.S. requires intensive residential supports in order to engage in learning. H.S. is diagnosed with autism and has a long history of aggressive and self-injurious behaviors that interfere with his ability to learn and develop age-appropriate social and independent daily living skills.

82.    H.S. was first diagnosed with autism spectrum disorder ("ASD") at the age of two. His current diagnoses include ASD, oppositional defiant disorder, and intermittent explosive disorder.

83.    Since age five, H.S. has been attending Defendant DOE's Specialized District 75 Schools with highly structured special education classes and related services including a paraprofessional to ensure his and others' safety. At home, he has received various social services and training.

84.    H.S. has a long history of aggressive and self-injurious behaviors that interfere with his ability to learn and develop age-appropriate social and independent daily living skills. Maladaptive behaviors include losing his temper, cursing, eloping, searching the house for sharp objects, making threatening gestures toward M.A., all or any of which result in aggression towards others, self-injurious behaviors, and destruction of property.

85.    H.S.'s maladaptive behaviors have increased in both frequency and severity to the point that Plaintiff M.A. was not able to control him.

86.    H.S. has seriously hurt M.A. and his siblings on many occasions. He has tried to sexually abuse M.A. and his sisters; he has tried to kill M.A. and himself; and he has been admitted to psychiatric hospitals on numerous occasions due to his violent outbursts and aggressive and harmful actions.

87.    H.S. was hospitalized in July 2021 for threatening to cut himself with scissors.

88.    Academically, H.S. has reading and math grade level equivalencies of pre-kindergarten and falls within moderate intellectual disability range.

89.    H.S. was initially approved for residential program on his IEP as a result of a FOFD issued by IHO Renee Adonis, Esq., on September 21, 2023, ordering Defendant DOE to amend H.S.'s IEP to recommend a residential program and defer to the CBST to identify an appropriate residential school.

90.    The CBST is a centralized (i.e., serving the entire school district) department of the DOE that is tasked with applying to appropriate residential nonpublic schools for the admission of students that the CSE recommends for placement in an NPS.

91.    In September 2023, Defendant deferred H.S.'s case to the CBST to recommend a NYSED-Approved Residential NPS. Defendant's CSE determined that H.S. requires 24/7 therapeutic and structured care and recommended a 12-month placement in a NYSED-Approved NPS Residential due to safety concerns for himself and his family.

92.    The CBST referred H.S. to 22 NYSED-Approved NPS programs, none of which accepted H.S., primarily due to the severity of his maladaptive behaviors.

93.     In a subsequent impartial hearing, IHO Peggy Chan's October 15, 2024 FOFD found that Defendant DOE denied H.S. a FAPE for the 2023-2024 and 2024-2025 school years.

94.     IHO Chan also found that Defendant DOE discriminated against H.S. under Section 504 of the Rehabilitation Act for the 2024-2025 school year, holding that DOE's failure to provide an appropriate residential placement denied H.S. equal treatment in relation to his peers: "Student has been denied access to the education and program that was recommended in his IEP because of the severity of his disability-related behaviors. As a result, Student has remained in a placement [District 75] that is inappropriate for the school years at issue. I further find that Student has been denied educational benefits solely because of his disability in violation of Section 504".

95.     IHO Chan also found that Defendant DOE acted with deliberate or reckless indifference because the DOE reverted to its prior program recommendation of a 12:1:1 special education classroom in District 75, which had previously been deemed inappropriate, without any explanation or justification.

96.     IHO Chan noted that the DOE had agreed that a residential placement was appropriate for H.S. at the IEP meeting on August 15, 2023, and the CBST began its search to locate a residential placement for H.S. in September 2023. H.S. was rejected from over 20 residential programs as late as December 2023.

97.     IHO Chan found that six months later, the IEP developed at the June 11, 2024 meeting barely mentioned any behavioral concerns. In fact, Defendant's IEP incredibly noted that H.S. was not in need of any support or interventions to address his behavior or a behavioral intervention plan.

98.     IHO Chan held that when Defendant DOE was unable to locate a residential placement for H.S., it simply reverted back to the same 12:1:1 placement in a District 75 school that it had previously recommended, "a setting that has been deemed inappropriate by another IHO and in which Student continues to regress in his behavior and fail to make academic and developmental progress."

99.     In response to Plaintiff M.A.'s current request for pendency, Defendant DOE has asserted in the appeal to the SRO that H.S. should be placed in the same District 75 program that two separate IHOs have deemed an inappropriate denial of FAPE, and which the last IHO found also violated Section 504.

100.    IHO Chan stated that, "To continue to leave Student in an inappropriate placement in District 75 for an indefinite period, given all of the documented safety concerns, is untenable… . Despite Student's continued need for more intensive services, the CSE simply recommended the same 12:1:1 placement in a District 75 school, a setting that has been shown to be inappropriate."

101.    As a result of the denial of FAPE, IHO Chan found that the private placement at Shrub Oak satisfied the Prong II factors of the *Burlington/Carter* analysis and was appropriate.

102.    Shrub Oaks is a therapeutic day and residential boarding school for students on the autism spectrum who face complex challenges and who need significant adult support. Shrub Oak specializes in working with students who present challenging behaviors.

103.    IHO Chan summarized Shrub Oak's witness testimony that described the residential program and how it addressed H.S.'s academic and behavior needs. H.S. has 1:1 support during his educational hours (8 hours) and during his waking hours. Intensive psychiatric

and behavioral supervision are provided and Therapeutic Crisis Intervention is used to deescalate violent behaviors.

104.    H.S. also receives clinical support with respect to his behavioral and social/emotional needs from a BCBA and a Crisis Support Team.

105.    At Shrub Oak, H.S. receives continuous support to address his aggression and self-injurious behaviors.

106.    As set forth in the IHO Chan's October 15, 2024 FOFD and acknowledged by the DOE's referral to residential placement, H.S. needs support and supervision 24 hours a day.

107.    IHO Chan held that Shrub Oak is not only an appropriate placement, but the only available residential school willing to accept H.S.

## THE AUGUST 12, 2025 ORDER ON PENDENCY

108.    IHO Martin requested briefs from the parties and then issued an OP dated August 12, 2025 denying Plaintiff M.A.'s request for pendency at Shrub Oak.

109.    As set forth therein, although Defendant DOE contests Plaintiff's request for pendency placement at Shrub Oak, it  has not offered H.S. an alternate educational placement.

110.    As set forth in Plaintiffs' DPC, Defendant DOE has not even held an IEP review meeting to develop an appropriate educational program for the 12-month 2025-2026 school year. As such, Defendant DOE has not provided H.S. with any educational program or placement for the 2025-2026 school year.

111.    IHO Leah Martin, Esq. denied pendency at Shrub Oak based on the assertion that the October 15, 2024 FOFD order to fund the tuition at Shrub Oak, was a "compensatory remedy" and thus, not a basis for H.S.'s current educational placement.

18

112.    Contrary to IHO Martin's assertion, once IHO's Chan's FOFD for the 2024-2025 school year became final and binding and after Defendant DOE failed to appeal it, and H.S. was enrolled at Shrub Oak, the private school became his "current educational placement".

113.    Contrary to the facts and law, IHO Martin found that the last agreed program for pendency was the August 13, 2023 IEP, which recommended a residential placement in a NYSED-Approved NPS for the 12-month school year. Not even Defendant DOE suggested the August 13, 2023 IEP as a basis for pendency.

114.    In addition, IHO Chan has already found in the October 15, 2024 FOFD that Defendant DOE violated FAPE with regard to that program because the CBST had not located any NYSED-Approved NPS willing to accept H.S.

115.    For IHO Martin to revert back to a program that Defendant DOE cannot implement, is to deny H.S. any program during the pendency of the administrative proceedings.

116.    As IHO Chan recognized, because of H.S.'s disabilities and threats to himself and his family, H.S. requires a residential program with 24-hour supervision, and Shrub Oak is the only appropriate program willing to provide it to H.S.

PLAINTIFFS DO NOT NEED TO FURTHER<br>EXHAUST ADMINISTRATIVE REMEDIES

117.    Defendants may argue that Plaintiffs failed to exhaust administrative remedies.

118.    Plaintiffs have already exhausted their remedies to the extent that they were required to do so.

119.    Further exhaustion would be futile.

120.    Defendants have failed to ensure parents in New York City access to due process hearings that comply with the IDEA and Section 504.

121.    Plaintiffs are not required to exhaust remedies to address the fact that the Defendants have failed to timely and appropriately implement the FOFD issued by IHO Chan.

## FIRST CLAIM: IDEA's PENDENCY MANDATE

122.    Plaintiffs repeat and re-allege paragraphs 1 through 121 as if fully set forth herein.

123.    H.S. has a qualifying disability under the IDEA.

124.    By virtue of his disabilities, H.S. needs special education services including residential placement.

125.    The IDEA requires that a child "stay put" in his or her last agreed upon-placement when a DPC is filed.  20 U.S.C. § 1415(j).

126.    Pendency rights are supposed to be automatic and unconditional; they attach when a parent files for due process.

127.    A student's "stay-put" rights ("pendency") can be changed by agreement between the parties, or by a final, unappealed order of an IHO, SRO, or court.

128.    An unappealed order constitutes an agreement between a parent and the DOE.

129.    Defendants do not have policies and procedures in place to ensure that students' pendency rights are timely implemented such that the intended purpose of pendency is served.

130.    The DOE has not implemented H.S.'s stay-put placement.

131.    Pursuant to 20 U.S. § 1415(j), H.S. is entitled to maintain in his "then current placement."

132.    Defendant DOE has not provided H.S. with any interim placement that would satisfy the pendency requirement.

133.    H.S.'s continued placement at Shrub Oak is necessary for H.S. to have a pendent placement under §1415(j).

134.    Plaintiff cannot afford to pay for the placement at Shrub Oak without Defendants' public funding.

135.    Shrub Oak has advised Plaintiff M.A. that it will discharge H.S. if funding is not received by September 30, 2025.

136.    If H.S. is discharged from Shrub Oak and forced to return home, he will be a threat to himself, M.A., his sisters, and any other students or teachers H.S. is placed with, without the 24/7  supports and supervision he requires for his and the safety of others.

137.    Without the intensive 24/7 supervision and support provided at Shrub Oak, H.S. has no prospect of educational progress.

## SECOND CLAIM: VIOLATION OF THE IDEA

138.    Plaintiffs repeat and re-allege paragraphs 1 through 137 if fully set forth herein. H.S. is entitled to a FAPE under IDEA.

139.    Defendant DOE has not conducted a mandatory annual IEP review meeting to provide H.S. with an appropriate educational program Defendant DOE has agreed that H.S. requires a residential placement to receive FAPE, but has not provided him with any residential placement.

140.    Although Defendant DOE continues to find H.S. eligible for special education it has denied H.S. a FAPE by failing to provide H.S. with an appropriate educational program and for the 12-month 2025-2026 school year.

141.    This Court has authority to provide injunctive relief "to modify a student's placement pursuant to the equitable authority provided in 20 U.S.C. § 1415(i)(2)(B)(iii). *See De Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 534, n.65 (2d Cir. 2020).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff M.A. respectfully requests the Court enter a temporary restraining order, and a preliminary and permanent injunction granting the following relief:

1. Assume jurisdiction over this action;

2. Issue a TRO and preliminary injunction directing Defendants to immediately implement H.S.'s stay-put rights, implement the IHO Chan's Directive and H.S.'s pendency placement at Shrub Oak;

3. Issue a declaratory judgment on behalf of Plaintiffs that Defendants have violated Plaintiffs' rights as alleged herein in violations of applicable federal and state laws;

4. Issue a temporary and preliminary injunction requiring Defendants to fund H.S.'s placement at Shrub Oak pending the completion of the administrative and judicial review process for the 2025-2026 school year;

5. Issue a permanent injunction directing Defendants (a) to implement the FOFD pendency placement as required by law and authorize the necessary funding for the delivery of services to H.S. at Shrub Oak;

6. Award Plaintiff reasonable attorneys' fees and costs in accordance with his status as the prevailing party in the Impartial Hearing and implementation of FOFD and/or SRO Decision as required by law;

7. Award Plaintiff reasonable attorneys' fees and costs incurred in connection with this action;

8. Award additional equitable relief to remedy the failure to implement the FOFD decision directing the DOE to place and fund H.S.'s residential placement at

Shrub Oak;

9.  Grant such other and further relief as to the Court may seem just and proper.

Dated:  September 11, 2025
        New York, New York

Respectfully submitted,

/s/Laura D. Barbieri_____  *Laura D. Barbieri*        /s/ Anton G. Cohen_____
Laura D. Barbieri, Esq., Of Counsel              Anton G. Cohen, Esq., of Counsel
The Law Office of Laura D. Barbieri, PLLC          Law Office of Anton G. Cohen, PC
*Attorneys for Plaintiffs*                          *Attorneys for Plaintiffs*
115 W 73rd Street, Ste. 1B                         618 Coney Island Avenue
New York, NY 10023                                 Brooklyn, NY 11218
Tel: (914) 819-3387                                Tel: (718) 702-5702
Email: LDBarbLaw@gmail.com                          Email: anton@aplawny.com